JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

ICONLAB INC., a California corporation, ICON LAB GmbH, a German corporation, REPER-NN, CO. LTD, a Russian corporation,

Plaintiffs,

vs.

BAUSCH HEALTH COMPANIES INC., a Canadian corporation (f/k/a Valeant Pharmaceuticals International, Inc.); BAUSCH & LOMB INCORPORATED, a New York corporation; ANADOLU TIP TEKNOLOJILERI URETIM PAZARLAMA ITHALAT IHRACAT TICARET ve SANAYI ANONIM SIRKETI, a Turkish corporation, and DOES 1-20, inclusive,

Defendants.

Case No. 8:16-cv-01321-JLS-KES

**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. 138)**

Before the Court is a Motion for Judgment on the Pleadings filed by Defendants Bausch Health Companies Inc. (f/k/a Valeant Pharmaceuticals International, Inc.) and Bausch & Lomb Incorporated (collectively, "Bausch Defendants"). (Mot., Doc. 138; Mem., Doc. 138-1.) Plaintiffs Iconlab Inc., Icon Lab GmbH, and Reper-NN, Co. Ltd. opposed. (Opp., Doc. 139.) Bausch Defendants replied. (Reply, Doc. 141.) For the

following reasons, the Court GRANTS the Motion and DISMISSES the action.

**I. <u>Background</u>**

The facts and allegations underlying this dispute are well-known to the parties and have been chronicled in numerous filings and Orders. (*See, e.g.*, Order re MTD, Doc. 58 at 1-5.) In relevant summary: this suit is brought by three affiliated companies who allege to have developed and licensed certain interocular lens technology (the "Technology") and shopped the Technology to potential buyers. (*Id.* at 1-2.) Instead of proceeding with a purchase of the Technology from Plaintiffs, however, the buyers induced a licensee to make an unauthorized sale of the Technology. (*Id.*)

The Court briefly recounts the parties at issue in this Motion.

Defendant Anadolu Tip is a Turkish company headquartered in Sivas, Turkey. (Second Amended Complaint, Doc. 59 ¶ 20.) Through a number of agreements signed between 2003 and 2007, Plaintiffs licensed the Technology to Anadolu Tip, including confidential technical files, drawings, formulas, and calculations for producing certain intraocular lenses. (*Id.* ¶¶ 23-28; Exs. C-E to SAC, Docs. 59-1 and 59-2.) Anadolu Tip allegedly agreed not to sell or transfer the Technology without Plaintiffs' approval. (SAC ¶ 28; Ex. E to SAC.) In 2014, however, Anadolu Tip entered into three Asset Sale and Purchase Agreements ("ASPAs"), by which it conveyed the Technology to nonparties Valeant Pharmaceuticals Luxembourg ("Valeant Lux"), Valeant Holdings Ireland ("Valeant Ireland") and Bausch & Lomb Saglik ("B&L Saglik") (collectively, the "Valeant EMEA Entities").[1] (ASPAs Nos. 1-3, Exs. 1-3 to Mishra Decl., Doc. 138-2.)

Nonparty Mediworld Fze is a United Arab Emirates-based entity whose alleged sole shareholder, Ahat Alper Kilinc, is also alleged to be a principal shareholder and director of

---

[1] The third ASPA is stylized as an amendment to the first ASPA. (*See* ASPSA No. 3). The third ASPA, however, includes a party not listed in the first ASPA, Valeant Lux, and may therefore be better understood as a new agreement. (*Id.*) The Court will refer to the third ASPA as a separate agreement in this Order but notes that such a distinction is immaterial for purposes of this discussion.

Anadolu Tip. (SAC ¶ 50.) Mediworld is listed as a "seller" along with Anadolu Tip in two of the three ASPAs in question. (ASPAs Nos. 1, 3.) Similarly, nonparty Boyut Medikas Optik Saglik Kozmetik ("Boyut") is a Turkish entity whose alleged sole shareholder is Mr. Kilinc. (SAC ¶ 50.) Boyut is listed as a "seller" along with Anadolu Tip in one of the ASPAs. (ASPA No. 2.) Plaintiffs allege that Mediworld and Boyut were used to funnel funds from the purchasing Defendants to Mr. Kilinc and other Anadolu Tip directors as part of the ASPA transactions. (SAC ¶¶ 51, 55-57, 60.)

Valeant Lux is a Luxembourg-based company which owns Valeant Ireland, an Irish company, which, in turn, owns B&L Saglik, a Turkish Company. (Lewis Decl., Doc. 52-4 ¶ 14; B&L Saglik Interrogatory Responses, Doc. 52-3 at No. 6; ASPA No. 3.) In 2014, these Valeant EMEA Entities entered into the ASPAs with Anadolu Tip, Mediworld, and Boyut to acquire the Technology. (ASPAs Nos. 1-3). None of the Valeant EMEA Entities are currently party to this litigation. Valeant Ireland and B&L Saglik were initially named as Defendants but were dismissed for lack of personal jurisdiction. (Order re MTD at 8-11.)

Bausch Defendants are the purported parent companies of the Valeant EMEA Entities. After jurisdictional discovery, however, the Court ruled that the Valeant EMEA Entities were not legal alter egos or agents of Bausch Defendants. (*Id.* at 10-11.) Plaintiffs allege that Bausch Defendants were involved in orchestrating the ASPA transactions. (*See* SAC ¶¶ 36-69.) Bausch Defendants are not signatories to any of the ASPAs.

Plaintiffs filed the operative Second Amended Complaint on May 16, 2017. That pleading brings 21 causes of action for a variety of tort, contract and statutory claims, including: breach of contract, conversion, fraud, unjust enrichment, intentional interference with contract, and trade secret misappropriation. (*Id.* ¶¶ 73-303.) In addition to monetary relief, Plaintiffs seek "a declaration of the parties' respective rights and obligations with respect to the [Technology]" (*id.* ¶ 301), as well an injunction requiring Defendants to cease using, make safe, and turn over all tangible items and information in their possession related to the Technology (*id.* at 93-94).

Bausch Defendants filed their Answer on August 10, 2017. (Answer, Doc. 72.) On August 17, 2018, Bausch Defendants filed their initial Motion for Judgment on the Pleadings. (First MJP, Doc. 100.) At that time, Anadolu Tip had not yet been properly served, and much of the parties' briefing concerned Anadolu Tip's absence from the case and the Rule 19 implications thereof. (*See id.*) While that motion was pending, Plaintiffs effectuated service on Anadolu Tip. (Proofs of Service, Docs. 122, 128.) Anadolu Tip did not timely respond or appear, and the Clerk accordingly entered default at the Court's direction. (Order re Default, Doc. 131; Entry of Default, Doc. 132.) Despite not having appeared, the Court did not consider Anadolu Tip "absent" for Rule 19 purposes and requested that Bausch Defendants renew their motion and remove the arguments regarding Anadolu Tip. (Order re First MJP, Doc. 133 at 3.)

Bausch Defendants now bring a renewed Motion for Judgment on the Pleadings. (Mot.) Specifically, Bausch Defendants request dismissal of this suit under Rule 19 for Plaintiffs' failure to join Valeant Lux, Valeant Ireland, B&L Saglik, Boyut, and Mediworld (collectively, the "Absent Parties"). (Mem. at 1.)

## II. <u>Legal Standard</u>

"The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Here, where Defendants seek dismissal for failure to join a necessary party under Rule 19, the appropriate analog is Rule 12(b)(7), which expressly incorporates the requirements of Rule 19. Fed. R. Civ. P. 12(b)(7).

Rule 19, in turn, prompts "three successive inquiries." *E.E.O.C. v. Peabody Western Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) (citing *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999)). First, the court must determine whether a nonparty is a "necessary

party" under Rule 19(a).[2] *Id.* If so, "the second stage is for the court to determine whether it is feasible to order that the absentee be joined." *Id.* "Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed." *Id.* Simply stated, an action must be dismissed if a necessary party who cannot be joined would be indispensable to an equitable resolution of the suit. *Id.* at 779-80.

"The [Rule 19] inquiry is a practical, fact-specific one, designed to avoid the harsh results of rigid application." *Dawavendewa v. Salt River Project Agricultural Improvement & Power District*, 276 F.3d 1150, 1154 (9th Cir. 2002) (citing *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990)); *and see Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118-19 (1968). Evaluating the propriety of dismissal "requires the district court to analyze various equitable considerations within the context of particular litigation, rather than to decide a purely legal issue." *Walsh v. Centeio*, 692 F.2d 1239, 1242 (9th Cir. 1982).

"The moving party has the burden of persuasion in arguing for dismissal." *Makah Indian Tribe*, 910 F.2d at 558. The Court may consider evidence beyond the pleadings to resolve a Rule 12(b)(7) motion because "[t]he Court 'has a duty to protect absent persons who will be affected by [its] decree,' thus, the inquiry into whether such persons exist 'should not be hampered by the evidentiary rules [Plaintiffs] would impose,'" *i.e.*, confinement to the pleadings. *Westside Building Materials Inc. v. Travelers Casualty & Surety Co.*, 2014 WL 12695691, at *2 (C.D. Cal. June 25, 2014) (quoting *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960)) (alterations original). Although the Court *may* look to record evidence, the pleadings still form the core of operative facts. That, is, where the parties do not offer evidence to the contrary, the Court's analysis will rely on the

---

[2] "In 2007, 'necessary' under Rule 19(a) was replaced by 'required.' Likewise, the word 'indispensable' was deleted from the text of the Rule. These changes, however, were 'stylistic, not substantive so [they have] no effect on the analysis.'" *CF Medical, LLC v. Alexius Hospital Corp.*, 2011 WL 1990557, at *5 (C.D. Cal. May 20, 2011) (quoting *Walter v. Drayson*, 538 F.3d 1244, 1249 n. 2 (9th Cir. 2008)) (alterations original).

allegations in the Second Amended Complaint.

**III. Discussion**

**A. Necessary Parties**

Bausch Defendants assert that the Absent Parties are necessary parties to this action. (Mem. at 1.) "Necessary" is a term of art, meaning "those persons to be joined if feasible." *E.E.O.C.*, 400 F.3d at 779. "If understood in its ordinary sense, 'necessary' is too strong a word, for it is still possible under Rule 19(b) for the case to proceed without the joinder of the so-called 'necessary' absentee." *Id.* The term is better understood to encompass those parties whose joinder is *desirable* because they have an interest in the litigation and their presence allows the court to effectively craft a remedy. *See id.* "Rule 19(a) provides a two-pronged inquiry for determining whether a party is 'necessary.'" *White v. University of California*, 765 F.3d 1010, 1026 (9th Cir. 2014) (citing *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir.1991)).

"First, the court must determine whether complete relief can be afforded if the action is limited to the existing parties. Second, the court must determine whether the absent party has a 'legally protected interest' in the subject of the action and, if so, whether the party's absence will 'impair or impede' the party's ability to protect that interest or will leave an existing party subject to multiple, inconsistent legal obligations with respect to that interest." *Id.* (internal citations omitted). A party is deemed "necessary" "[i]f the answer to either of those questions is affirmative." *Id.*

**1. Complete Relief**

Bausch Defendants posit that complete relief cannot be afforded without the Absent Parties because those parties are the purported buyers (Valeant EMEA Entities) and sellers (Boyut and Mediworld) of the Technology at issue. (Mem. at 9-14.) Particularly, Bausch Defendants argue that Plaintiffs' claims center on a scheme to misappropriate the Technology and Plaintiffs primarily seek re-appropriation of said Technology through

equitable relief, including: (1) a declaratory judgment that Plaintiffs are the rightful owners of the Technology and (2) injunctive relief prohibiting Defendants from further using or misappropriating the Technology. (*Id.* at 9-10.) Therefore, Bausch Defendants contend, all parties who purport to own the Technology are necessary to make a determination of ownership and rights. (*Id.* at 10-11.) Plaintiffs concede that equitable relief must be a chief component of any judgment amounting to "complete relief" among the present parties. (Opp. at 10-11.) Indeed, Plaintiffs assert that complete relief is available precisely *because* an injunction against Bausch Defendants would necessarily bind the Valeant EMEA Entities. *Id.* However, this argument appears to rest on a finding of an agency relationship between Bausch Defendants and the Valeant EMEA Entities, and explicitly rests on this Court having personal jurisdiction over Valeant Ireland and B&L Saglik, both notions that the Court has definitively rejected.[3] (Order re MTD at 8-11.)

Suits seeking widespread equitable relief do not easily permit complete relief without the presence of all interested parties. *See, e.g.*, *Wright v. Incline Village General Improvement District*, 597 F. Supp. 2d 1191, 1206 (D. Nev. 2009) ("[W]here a plaintiff seeks injunctive or declaratory relief and a third-party has an enforceable interest in the

---

[3] At oral argument, Plaintiffs suggested the Valeant EMEA Entities would be subject to an injunction by this Court because "Valeant EMEA" is an "unincorporated division" of Bausch Defendants and therefore subject to the Court's jurisdiction by effect of jurisdiction over the parent companies. This assertion, however, is an unsubstantiated end-run around the Court's conclusion of no agency or alter ego relationship between Bausch Defendants and the Valeant EMEA Entities. Moreover, in response to Plaintiffs' suggestion, Bausch Defendants represented that "Valeant EMEA" is simply an informal moniker referring to a large group of Bausch Defendants' subsidiaries in Europe, the Middle East, and Asia—most of whom are not involved in this dispute. "Valeant EMEA" is not a legally identifiable (or enjoinable) entity; whether any one subsidiary under the informal "Valeant EMEA" umbrella is an agent of Bausch Defendants or otherwise subject to the jurisdiction of the Court is an individualized analysis. The Court has already undertaken such analysis with respect to the relevant subsidiaries and is not inclined to revisit its conclusions on a bare assertion that those subsidiaries hold an informal designation per their parent companies' corporate nomenclature. Regardless, a finding of agency or alter ego between Bausch Defendants and an Absent Party is not by itself enough to render the latter unnecessary to disposition of this action. *See Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 559-60 (5th Cir. 1985) (collecting cases and observing widespread agreement among courts that alter ego status rarely undoes the necessity of joining both a parent *and* subsidiary when both are alleged to be "active participants" in the wrongdoing).

subject matter of the dispute, the court cannot grant complete relief in the third party's absence."). This is especially true where the Court is asked to make determinations of ownership. *See CF Medical*, 2011 WL 1990557, at *7. "[W]ithout [the Absent Parties'] presence in the suit[,] the Court cannot determine whether Plaintiff[s], [the Absent Parties,] or Defendants are the 'rightful owners' of the [Technology], which is the underlying question in dispute." *Id.* This is not a case involving allegations of mere joint tortfeasor liability where compensation from any Defendant could make Plaintiffs whole, notwithstanding any other alleged wrongdoer's absence. *See Lopez v. Federal National Mortgage Association*, 2013 WL 7098634, at *5 (C.D. Cal. Oct. 8, 2013) ("Simply because a party may be jointly liable . . . does not render it a necessary party."). Rather, this is a case that necessitates *equitable* distribution of rights among all parties involved in the dispute, meaning "any relief granted [as to only the present parties] would be hollow because it would not bind a third party who was a cause of the same [equitable] injury to the plaintiff." *Id.* at *7.

The parties agree that complete relief requires a declaration that Plaintiffs are the rightful owners of the Technology and a corresponding injunction. But the Court is not equipped to enforce these remedies without the presence of the Absent Parties. For example, if the Court declared that Bausch Defendants are not the proper owners of the Technology, and are enjoined from its further use or sale, the Absent Parties could still purport to be the rightful owners of the Technology and might even receive a declaration of such rights by a foreign tribunal or through settlement. In short, this Court does not have the power to make Plaintiffs whole without imposing obligations on the Absent Parties.

Therefore, because complete relief in this suit would require widespread equitable remedies enforceable against the Absent Parties, the Court concludes that the Absent Parties are "necessary" parties under Rule 19.

**2. Legally Protectable Interests**

Even if the Court were to find that complete relief is possible among the present

parties, Bausch Defendants argue that the Valeant EMEA Entities have legally protectable interests in this suit that render them necessary parties.[4] (Mem. at 14-19.) Like "necessary party," "legally protectable interest" in the Rule 19 context is a term of art and somewhat ambiguous concept. *See Ward v. Apple Inc.*, 791 F.3d 1041, 1051 (9th Cir. 2015) (noting the Ninth Circuit has "offered little guidance regarding which interests warrant legal protection under Rule 19"). To be sure, not *any* interest clears the threshold; the Ninth Circuit has "required that the interest 'be more than a financial stake, and more than speculation about a future event.'" *Id.* (quoting *Cachil Dehe Band of Wintun Indians of the Colusa Indian Community v. California*, 547 F.3d 962, 970 (9th Cir. 2008)). This ambiguity is lessened, however, in the realm of contracts. "For instance, it is well established that all parties to a contract are necessary in an action to set aside the contract." *Id.* (citing *Wilbur v. Locke*, 423 F.3d 1101, 1113 (9th Cir. 2005)).

Here, Plaintiffs' insist they are not seeking to set aside the ASPAs. (Opp. at 19.) But the allegations in the Second Amended Complaint belie these bare assertions. The crux of Plaintiffs' claims is that Anadolu Tip, Mediworld, and Boyut could not rightfully have transferred the Technology to the Valeant EMEA Entities because the Technology was not the selling parties' property. Any relief that restores money or property rights to their pre-ASPA possessors is unwinding those transactions. A set-aside by any other name does not change the analysis.

"[Ninth Circuit] cases also establish that an absent party may be required in an action seeking equitable relief that would prevent a defendant from fulfilling 'substantial' contractual obligations to the absent party." *Ward*, 791 F.3d at 1053; *and see Cachil Dehe Band of Wintun Indians*, 547 F.3d at 970-71. For example, an injunction could force Anadolu Tip to breach the ASPAs with respect to ongoing obligations to the Valeant EMEA Entities that give full effect to the transfer of the Technology. Anadolu Tip "would

---

[4] Bausch Defendants do not assert that Mediworld or Boyut have legally protectable interests; the sole argument advanced regarding the necessity of those entities is that complete relief cannot be afforded in their absence. (Reply at 7-8.)

be between the proverbial rock and a hard place—comply with the injunction prohibiting the [Technology transfer] or comply with the [contract] requiring it." *Dawavendewa*, 276 F.3d at 1156; *and see Wright*, 597 F. Supp. 2d at 1206-07. The only way to ease this tension is to undo the contracts at issue—making signatories to those contracts necessary parties. *Wilbur*, 423 F.3d at 1113 ("[I]t is a fundamental principle that a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract.") (internal quotation marks omitted).[5]

Once it establishes that a "a legally protected interest exists, the court must further determine whether that interest will be *impaired or impeded* by the suit. Impairment may be minimized if the absent party is adequately represented in the suit." *Salt River Project Agricultural Improvement & Power District v. Lee*, 672 F.3d 1176, 1180 (9th Cir. 2012) (quoting *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992)) (internal quotation marks omitted) (emphasis original). Such adequate representation requires the presence of three factors: (1) the present party's interests will undoubtedly cause it to make all of the absent party's arguments; (2) the present party is willing and capable of making such arguments; and (3) the absent party would not offer any necessary element to the proceedings that the present parties would neglect. *Id.*

*In re Toyota Motor Corp.*, 785 F. Supp. 2d 883 (C.D. Cal. 2011) is illustrative of why those factors are not present here. In that case, consumers brought claims against Toyota Motor Corporation ("TMC") and several of its subsidiaries for defects in the electronic throttle control system ("ETCS") of vehicles purchased from TMC affiliates, including some foreign affiliates who were not named as parties. *Id.* at 898-900. TMC did

---

[5] A legally protected interest does not automatically make its possessor a necessary party; the possessor must actually assert or otherwise "claim" to possess the interest. *Ward*, 791 F.3d at 1051 (quoting *Bowen*, 172 F.3d at 689); *Lopez*, 2013 WL 7098634, at *6. Plaintiffs do not argue that the Valeant EMEA Entities have not claimed an interest here. B&L Saglik and Valeant Ireland have plainly notified the Court of their interests by appearing in the action and mounting a defense. The parties do not provide any indication one way or the other whether Valeant Lux has made a demonstration of interest. The ambiguity with respect to Valeant Lux, however, does not affect the outcome here.

not manufacture or distribute the vehicles sold by these absent foreign affiliates. *Id.* at 905. In assessing the present parties' incentives and the likelihood of prejudice to the absent parties, the court concluded that the present parties did not adequately stand in for the absent necessary parties.

> Despite the obvious community of interest the various Toyota entities may have in arguing that the ETCS is not defective, those interests may diverge at trial. For example, because the named Toyota entities cannot be held liable for the acts of their subsidiaries, sister companies, and/or affiliates, absent an agency relationship, they may attempt to show that the absent entities are responsible for the allegedly defective design. On the other hand, if the absent entities were fully represented, they may want to ascribe blame to TMC and/or the other named defendants in order to deflect liability from themselves. Because the interests of the absent parties may not be adequately protected by the named defendants, there is no mitigation of prejudice.

*Id.* at 908 (internal citations and quotation marks omitted). *Cf. Salt River*, 672 F.3d at 1180-81 (where the Ninth Circuit found that tribal officials—named as defendants in their official capacities—would make arguments coextensive with those of their nonparty tribe). Here, the Court has already rejected allegations of agency relationship. (Order re MTD at 10-11.) Indeed, Plaintiffs' attempt to replead the dismissed Valeant EMEA Entities into this case were struck by the Court. (*See* Order re MTS, Doc. 71 at 1-2.) Hence, lacking evidence of pure comity of interest, the Court concludes that the Valeant EMEA Entities will not be adequately represented by the present parties.

Accordingly, the Valeant EMEA Entities are necessary parties because they have legally protectable interests at stake in this suit.

### B. Feasibility of Joinder

Bausch Defendants assert that none of the five Absent Parties can feasibly be joined in this action. (Mem. at 19.) Plaintiffs do not offer any rebuttal. "Rule 19(a) sets forth three circumstances in which joinder is not feasible: [1] when venue is improper, [2] when the absentee is not subject to personal jurisdiction, and [3] when joinder would destroy

subject matter jurisdiction." *E.E.O.C.*, 400 F.3d at 779; Fed. R. Civ. P. 19(a). The Court agrees with Bausch Defendants; here, lack of personal jurisdiction likely bars joinder of each Absent Party. First, the Court has already ruled that it lacks personal jurisdiction over B&L Saglik and Valeant Ireland. (Order re MTD at 8-11.) Second, the Second Amended Complaint does not mention Valeant Lux, much less describe any conduct by Valeant Lux that would support personal jurisdiction in California; nor do Plaintiffs provide any reason why the Court should treat Valeant Lux differently than the other two Valeant EMEA Entities. Third, and similarly, the Second Amended Complaint only cursorily discusses Boyut and Mediworld and describes them as organized under the laws of Turkey and the United Arab Emirates, respectively. Plaintiffs provide no indication that either has any connection to California. Accordingly, the Court finds that none of the Absent Parties can feasibly be joined to this suit.

**C. Indispensable Parties**

Having established that the Absent Parties are necessary parties that cannot feasibly be joined, the final inquiry is whether they are also "indispensable" parties, such that their inability to be joined warrants dismissal of the action. "Indispensable parties under Rule 19(b) are 'persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.'" *E.E.O.C.*, 400 F.3d at 780 (quoting *Shields v. Barrow*, 58 U.S. 130, 139 (1854)). In making this determination, Courts must consider: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by shaping the judgment or the relief; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed. *Dawavendewa*, 276 F.3d at 1161-62; Fed. R. Civ. P. 19(b).

Analysis of the first three factors overlaps substantially with the discussion above.

First, a judgment here would prejudice the Absent Parties by effectively setting aside contracts in which they have substantial rights and interests. *See supra*, III.A.2. Such judgment might also prejudice present parties by creating obligations inconsistent with those contracts. *See id.* Moreover, this Court cannot afford adequate relief because complete relief requires extensive equitable remedies that would bind the Absent Parties. *See supra*, III.A.1. The final factor, availability of alternative relief, also favors dismissal. Despite Plaintiffs' insistence to the contrary (Opp. at 11.), the Court does not find that they would be left without a forum to bring their claims. Indeed, Bausch Defendants submit evidence that Plaintiffs are litigating multiple cases in foreign courts concerning the same dispute. (Exs. 4-8 to Mishra Decl.) This is not a case where sovereign immunity or another jurisdictional bar limits Plaintiffs to this forum. *Cf. Centric Technologies, LLC v. Georgia Tech Research Corp.*, 2013 WL 5372543, at *4 (N.D. Cal. Sept. 24, 2013) (weighing applicable state constitutional bar on sovereign suits in state court as a factor against dismissing the plaintiff's case from federal court). The doors to many other courthouses remain open.

On balance, acknowledging that dismissal is a drastic course, the Court concludes that a final judgment consistent with equity and good conscious is not possible without joinder of the Absent Parties. Accordingly, the case is dismissed pursuant to Rule 19.

**IV. <u>Conclusion</u>**

For the foregoing reasons, Bausch Defendants' Motion is GRANTED and the case is DISMISSED in its entirety.

Dated: May 15, 2019

Hon. Josephine L. Staton
United States District Judge